## MATTER OF FLORES

### In Deportation Proceedings

### A-14504749

*Decided by Board January 8, 1980*

(1) Conviction of a crime involving moral turpitude within the statutory period preceding an application for voluntary departure precludes establishment of good moral character requisite to eligibility for that relief. Sections 101(f) and 244(e) of the Immigration and Nationality Act, 8 U.S.C. 1101(f) and 1254(e).

(2) Moral turpitude refers to conduct which is morally reprehensible and intrinsically wrong, the essence of which is an evil or malicious intent.

(3) In order for a conspiracy offense to be a crime involving moral turpitude, it either must contain the element of fraud, or the underlying substantive offense must involve moral turpitude.

(4) Conspiracy to commit an offense against the United States in violation of 18 U.S.C. 371 is a crime involving moral turpitude if the underlying offense involves moral turpitude.

(5) Where fraud is clearly an ingredient of a crime, it involves moral turpitude, even if the usual phraseology concerning fraud is not included in the statute.

(6) Uttering and selling false or counterfeit paper relating to registry of aliens in violation of 18 U.S.C. 1426(b) entails a deliberate deception and impairment of governmental functions; thus, it is inherently fraudulent and is a crime involving moral turpitude. *Matter of K—*, 7 I&N Dec. 178 (BIA 1956), is overruled in part.

(7) Voluntary departure denied as a matter of discretion because the adverse factors of a history of entries without inspection following deportation and a conviction for selling fraudulent entry documents are not outweighed by the presence of two United States citizen children and other undocumented family members in the United States.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. 1251(a)(2)]—Entry without inspection

ON BEHALF OF RESPONDENT:
Juan Soliz, Attorney
Legal Services Center for Immigrants
1661 South Blue Island Avenue
Chicago, Illinois 60608

ON BEHALF OF SERVICE:
Martin Spiegel
Trial Attorney

BY: Milhollan, Chairman; Maniatis, Appleman, Maguire, and Farb, Board Members

In a decision dated July 19, 1979, the immigration judge found the

respondent deportable on his own admission under section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2), as an alien who entered the United States without inspection, and denied his application for voluntary departure. The respondent has appealed from that decision.

The respondent is a 42-year-old native and citizen of Mexico who last entered the United States on November 11, 1976, without presenting himself for inspection. He had previously been deported on November 6, 1976, for having entered this country without inspection. His wife and seven of his children also are in the United States without documentation, and he has two United States citizen children.

The record reflects that the respondent was convicted on December 18, 1978, in the United States District Court for the Northern District of Illinois for knowingly, willfully, and unlawfully conspiring to commit an offense against the United States, to wit: violate Title 18, United States Code, Section 1426(b) in violation of Title 18, United States Code, Section 371, and for uttering and selling false and counterfeit papers relating to registry of aliens in violation of Title 18, United States Code, Section 1426(b). The respondent was sentenced to 3 months of imprisonment on count 1 and received a suspended sentence on count 2 with a probation period of 5 years, consecutive to his prison term, with the condition that he return to Mexico and not reenter the United States unless given legal permission to do so.

The immigration judge denied the respondent's application for voluntary departure on the ground that he was statutorily ineligible as a result of his conviction. She further stated that she would deny the application in the exercise of discretion on the basis that the respondent did not merit the privilege because of his conviction and his entry into the United States without inspection 9 days following deportation. The respondent has appealed solely on the issue of voluntary departure, arguing that the immigration judge erred both in her finding on statutory eligibility and on discretion.

According to section 244(e) of the Act, 8 U.S.C. 1254(e), in order to be eligible for voluntary departure, an alien must establish, *inter alia*, that he is, and has been, a person of good moral character for at least 5 years immediately preceding his application for such relief. Under section 101(f) of the Act, 8 U.S.C. 1101(f), a person is precluded from establishing good moral character if he is a member of a class of persons, whether excludable or not, who has been convicted of a crime involving moral turpitude if the offense was committed during the 5-year period preceding application for relief. The issue we address on appeal, therefore, is whether the crimes for which the respondent was convicted involve moral turpitude.

The indictment upon which the respondent's conviction is based has

226

not been included in the record on appeal and was not before the immigration judge at deportation proceedings.[1] However, the record contains a judgment and probation/commitment order of the District Court which indicates that the respondent was convicted for violations of Sections 371 and 1426(b) of Title 18 of the United States Code.

Section 371 provides as follows:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both. . . .

According to the above-mentioned order, the respondent was convicted under Section 371 for conspiring to commit an offense against the United States, that substantive offense being a violation of Section 1426(b) which provides:

> (b) Whoever utters, sells, disposes of or uses as true or genuine, any false, forged, altered, antedated or counterfeited oath, notice, affidavit, certificate of arrival, declaration of intention to become a citizen, certificate or documentary evidence of naturalization or citizenship, or any order, record, signature or other instrument, paper or proceeding required or authorized by any law relating to naturalization or citizenship or registry of aliens, or any copy thereof, knowing the same to be false, forged, altered, antedated or counterfeited;
>
> . . . .
>
> Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Moral turpitude is a nebulous concept which refers generally to conduct which is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed between man and man, either one's fellow man or society in general. *See Matter of McNaughton,* 16 I&N Dec. 569 (BIA 1978); *Matter of S—,* 2 I&N Dec. 353 (BIA 1945; A.G. 1945); *Matter of G—,* 1 I&N Dec. 73 (BIA 1941; A.G. 1941). It has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. *Matter of P—,* 6 I&N Dec. 795 (BIA 1955). The test to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind. *See Matter of P—,* 3 I&N Dec. 56 (CO 1947; BIA 1948); *Matter of F—,* 2 I&N Dec. 754 (CO 1946; BIA 1947). An evil or malicious intent is said to be the essence of moral turpitude. *See Hirsch v. INS,* 308 F.2d 562 (9 Cir. 1962); *Tseung Chu v. Cornell,* 247 F.2d 929 (9 Cir. 1957), *cert. denied,* 355 U.S. 892 (1957); *Matter of P—,* 3 I&N Dec. 56 (CO 1947; BIA 1948); *Matter of S—, supra.* The most frequently cited definition of moral

---

[1] We note that the respondent's counsel waived the right to have the indictment produced at the hearing (Tr. p. 20).

turpitude was given by the Supreme Court in *Jordan v. DeGeorge*, 341 U.S. 223 (1951), where it was stated:

> Whatever else the phrase "crime involving moral turpitude" may mean in peripheral cases, the decided cases make it plain that crimes in which fraud was an ingredient have always been regarded as involving moral turpitude. . . . Fraud is the touchstone by which this case should be judged. The phrase "crime involving moral turpitude" has without exception been construed to embrace fraudulent conduct.

341 U.S. at 232.

With respect to the respondent's conspiracy conviction under Section 371, the record indicates that he was convicted under that clause of the statute which merely prohibits any offense against the United States. Intent to defraud the United States is not required for conviction. Since the element of fraud is not inherent in that part of the statute violated, it does not involve moral turpitude. *See Matter of G—*, 7 I&N Dec. 114 (BIA 1956).

A conspiracy to commit an offense involves moral turpitude only when the underlying substantive offense is a crime involving moral turpitude. *See Matter of McNaughton, supra; Matter of M—*, 8 I&N Dec. 535 (BIA 1960); *Matter of G—*, 7 I&N Dec. 114 (BIA 1956); *Matter of S—*, 2 I&N Dec. 225 (BIA 1944). We, therefore, must determine whether the crime of uttering and selling false and counterfeit papers relating to registry of aliens is one involving moral turpitude.

Perusal of Section 1426(b) reveals that intent to defraud the government has not specifically been made an essential element of the statute, although in order for a conviction to be obtained under that section, there must be proof of knowledge that the documents in question were false or counterfeit. We have held that where fraud is inherent in an offense, it is not necessary that the statute prohibiting it include the usual phraseology concerning fraud in order for it to involve moral turpitude. *Matter of R—*, 5 I&N Dec. 29 (BIA 1952; A.G. 1952; BIA 1953); *see also Matter of Martinez*, 16 I&N Dec. 336 (BIA 1977); *Matter of B—*, 7 I&N Dec. 342 (BIA 1956); *Matter of D—*, 2 I&N Dec. 836 (BIA 1947); *Matter of M—*, 1 I&N Dec. 619 (BIA 1943); *but see Matter of Lethbridge*, 11 I&N Dec. 444 (BIA 1965); *Matter of G—*, 7 I&N Dec. 114 (BIA 1956). The courts have also subscribed to the logic that where fraud is so inextricably woven into the statute as to clearly be an ingredient of the crime, it necessarily involves moral turpitude. *See Bisaillon v. Hogan*, 257 F.2d 435 (9 Cir. 1958), *cert. denied, sub nom. Bisaillon v. Sureck*, 358 U.S. 872 (1958); *Tseung Chu v. Cornell, supra; United States ex rel. Popoff v. Reimer*, 79 F.2d 513 (2 Cir. 1935); *Chanan Din Khan v. Barber*, 147 F. Supp. 771 (N.D. Cal. 1957), *aff'd*, 253 F.2d 547 (9 Cir.), *cert. denied*, 357 U.S. 920 (1958); *but see United States v. Wilkerson*, 469 F.2d 963 (5 Cir. 1972), *cert. denied*, 410 U.S. 986 (1973); *Hirsch v. INS, supra; United States v. Neelly*, 208 F.2d 337 (7 Cir. 1953).

In cases where fraud of the government has been charged, we have held that the government need not have been cheated out of money or property in order for the crime to involve moral turpitude. *Matter of S—*, 2 I&N Dec. 225 (BIA 1944). It is enough to impair or obstruct an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means. *See Matter of D—*, 9 I&N Dec. 605 (BIA 1962); *Matter of E—*, 9 I&N Dec. 421 (BIA 1961); *Matter of S—*, 2 I&N Dec. 225 (BIA 1944). Clearly, the sale of counterfeit documents relating to alien registry impairs the lawful procedures of the Immigration and Naturalization Service and thwarts its purpose of requiring aliens to have proper documentation to enter the United States. The question remains whether such an act constitutes a fraud against the government.

In *Matter of M—* and *Matter of R—*, *supra*, we held that the offense of knowingly making false representations in order to evade military service involved moral turpitude because it was an affirmative act calculated to deceive the government and, therefore, was inherently fraudulent. The court in *Popoff v. Reimer, supra*, reached a similar conclusion regarding the crime of knowingly aiding a person not entitled to naturalization to apply for or obtain citizenship, holding that it necessarily involved aiding an alien to commit a fraud upon the government. Likewise, willful evasion of taxes and knowingly making false statements with the intent to unlawfully obtain issuance of a passport have been considered to be tantamount to fraud on the United States and, therefore, crimes involving moral turpitude. *See Bisaillon v. Hogan, supra; Tseung Chu v. Cornell, supra; Chanan Din Khan v. Barber, supra; Matter of B—, supra; but see Matter of G—*, 7 I&N Dec. 114 (BIA 1956).

More closely analogous crimes to the offense committed by the respondent are those involving counterfeiting. The Supreme Court has stated in *Volpe v. Smith*, 289 U.S. 422 (1933), that counterfeiting obligations of the United States is plainly a crime involving moral turpitude. Accordingly, in *Matter of K—*, 7 I&N Dec. 178 (BIA 1956), we held that both the making and possessing of dies or molds of United States coins implicitly contained the element of intent to defraud and, therefore, were crimes of moral turpitude, although the statute required no finding of fraud for conviction. *Cf. Matter of Martinez, supra*. We cited as authority the decisions in *Baender v. United States*, 260 F. 832 (9 Cir. 1919), and *Kaye v. United States*, 177 F. 147 (7 Cir. 1910), where it was indicated that intent can be inferred from statutes prohibiting the making of counterfeit coins or implements because those offenses are inherently wrong. *But cf. United States v. Wilkerson, supra*. However, we further determined in *Matter of K—, supra*, that

another statute prohibiting the making of forged coins did not involve moral turpitude, reasoning that since the same statute specifically required intent to defraud in order for passing and possessing those coins to be a crime, no such intent must be involved in making them. We find this logic to be inconsistent with our ruling in the same case that making and possessing molds to counterfeit coins is a crime involving moral turpitude.Since we are unable to distinguish between the making of molds to counterfeit coins and the making of the coins themselves, we find that both offenses inherently contain the element of intent to defraud. Therefore, in congruity with our holding in the instant case, we overrule that part of the decision holding that the making of counterfeit coins does not involve moral turpitude. *But cf. Matter of Lethbridge, supra.*

We believe that the crime of uttering or selling false or counterfeit paper relating to registry of aliens with knowledge of their counterfeit nature inherently involves a deliberate deception of the government and an impairment of its lawful functions. Thus, fraudulent conduct is implicit in the statute. We, therefore, conclude that a violation of Section 1426(b) of Title 18, United States Code, is a crime involving moral turpitude. Accordingly, we find the respondent to be statutorily ineligible for the privilege of voluntary departure because his conviction precludes him from establishing that he is a person of good moral character.

Moreover, we agree with the immigration judge that the respondent has not shown himself to be deserving of discretionary relief. His history of entering the United States without inspection, particularly immediately following deportation, and his conviction for selling documents to permit the unlawful entry of other aliens indicates a disrespect for our immigration laws. These adverse factors are not outweighed by the fact that the respondent has two United States children and other family without proper documentation living in the United States.

Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.